UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 12-202-DLB**

**STANLEY BRYANT, JR.**                                                           **PLAINTIFF**

vs.                       **<u>MEMORANDUM OPINION & ORDER</u>**

**CAROLYN W. COLVIN, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will reverse and remand the Commissioner's decision, as it failed to follow the regulations and thus deprived Plaintiff of a substantial right.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Stanley Bryant, Jr. filed applications for supplemental security income and disability insurance benefits on March 27, 2009, alleging disability as of September 23, 2008. (Tr. 156-162). These applications were denied initially and upon reconsideration. (Tr. 85-101). At Plaintiff's request, an administrative hearing was conducted on December 21, 2010, by Administrative Law Judge Don C. Paris. (Tr. 37). On January 14, 2011, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to either benefit. (Tr. 22-31). This decision became the final decision of the Commissioner when the Appeals

1

Council denied review on May 8, 2012. (Tr. 1-4).

On July 2, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 25). At Step 2, the ALJ found Plaintiff's obesity, possible rotator cuff tendinitis and degenerative disk disease of the lumbar spine were severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 26). In doing so, the ALJ found that neither his possible rotator cuff tendinitis nor his degenerative disk disease meets or equals the requirements of Listing 1.02 (major dysfunction of a joint) or 1.04 (disorders of the spine) because "the record is devoid of any evidence of limitations in one or both extremities resulting in ineffective fine and gross manipulation as well as nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work activity with the following additional restrictions:

3

> the claimant can lift and carry 20 pounds occasionally and ten pounds frequently; stand/walk a total of six hours in an eight hour day; sit a total of six hours in an eight hour day; occasionally climb stairs and ramps but because of body habitus, never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch but never crawl; no more than frequent reaching overhead with the left upper extremity, avoid concentrated exposure to fully body vibration; and because of his body habitus, should avoid all hazards such as unprotected heights and dangerous machinery

(Tr. 27). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 29).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 30). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a general clerical worker (9,000 jobs in Kentucky/719,000 nationally), information clerk (2,500 jobs in Kentucky/200,000 nationally), and gate guard (2,500 jobs in Kentucky/250,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (Tr. 30-31).

**C. Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ erred by giving little weight to the medical opinions provided by his treating physicians. Second, Plaintiff argues that the ALJ's assessment of his credibility is flawed. Each of

4

these arguments will be discussed in turn.

### 1. The ALJ erred by failing to provide "good reasons" for giving little weight to the treating sources

Plaintiff takes issue with the ALJ's treatment of assessments completed by his two treating physicians, doctors John Vaughan and Finley Hendrickson. Dr. Vaughan submitted a medical report and functional capacity questionnaire dated June 7, 2010 and September 7, 2010, respectively, while Dr. Hendrickson submitted a questionnaire dated July 21, 2010. (Tr. 402-412, 415-420).

In his medical report, Dr. Vaughan indicated that Plaintiff should alternate between sitting, standing and lying flat as needed, and that he should avoid lifting greater than ten pounds and repetitive bending and twisting of the back. (Tr. 404). As a result, he concluded that Plaintiff did not retain the physical capacity to return to work as a truck driver. (*Id.*).

In his questionnaire, Dr. Vaughan limited Plaintiff to continuously sitting, standing and walking for ten minutes, five minutes and ten minutes, respectively. (Tr. 418). In an eight hour day, the doctor concluded that Plaintiff could sit for about two hours, but that any standing or walking would have to be for less than two hours. (*Id.*).

Dr. Vaughan further concluded that Plaintiff has significant limitations in his ability to use both hands to grasp, turn and twist objects, as well as to reach overhead. (Tr. 419). The doctor also noted that Plaintiff does not have the ability to bend and twist at the waist, and that he has a marked limitation in his ability to deal with normal stresses of competitive employment (such as working at a constant pace, working appropriately with co-workers and supervisors and not taking an excessive number of breaks). (Tr. 417, 419). Finally,

5

Dr. Vaughan concluded that Plaintiff's impairments would affect his ability to work at a regular job all day, every day, and estimated that Plaintiff would be absent five to ten days per month. (Tr. 419-420).

The questionnaire completed by Dr. Hendrickson mirrors the report and questionnaire completed by Dr. Vaughan. In his questionnaire, Dr. Hendrickson limited Plaintiff to continuously sitting, standing and walking for thirty minutes, fifteen to twenty minutes and fifteen minutes, respectively. (Tr. 409). In an eight hour day, the doctor concluded that Plaintiff could sit for about four hours and stand for about two hours, but that any walking would have to be for less than two hours. (*Id.*) Among other numerous limitations pertaining to ambulation, he opined that Plaintiff would need to lie down during the workday, elevate his legs at will, and alternative sitting, standing and walking at will. (Tr. 410).

Beyond ambulation, Dr. Hendrickson limited Plaintiff to lifting and carrying no more than ten pounds occasionally, and never carrying twenty pounds. (*Id.*). He further opined that Plaintiff has significant limitations in his ability to use his left hand to grasp, turn and twist objects, as well as to reach overhead. (Tr. 411). Finally, the doctor noted that Plaintiff does not have the ability to bend and twist at the waist, and that he has a marked limitation in his ability to deal with normal stresses of competitive employment. (Tr. 408, 411).

Based upon his impairments, Dr. Hendrickson did not believe that Plaintiff could work eight hours without enduring significant increased pain and dysfunction. (*Id.*). The doctor ultimately estimated that Plaintiff would be absent twelve or more days per month.

6

In his decision, the ALJ chose to give little weight to the assessments offered by doctors Hendrickson and Vaughan, as he considered them to be "inconsistent with the objective evidence of record." (Tr. 29). In doing so, the ALJ further noted that "Dr. Vaughan released Plaintiff to return to work in July 2009 with a restriction to 'light to medium duty.'" (*Id.*). Additionally, he viewed the assessments as "contraindicated by the conservative treatment provided by both physicians, as well as the level of severity that can reasonably be attribut[ed] to [Plaintiff's] impairments." (*Id.*).

Pursuant to the Code of Federal Regulations, doctors Hendrickson and Vaughan are "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) (characterizing licensed physicians as "acceptable medical sources"). Their opinions, then, are "medical opinions" as defined in the regulations, and would generally be entitled to controlling weight because the doctors are "treating sources."[1] *See* §§ 404.1527(a)(2) and (c), 416.927(a)(2) and (c) (defining "medical opinions" as statements from "acceptable medical sources" and providing that "treating sources" may be entitled to controlling weight); §§ 404.1502, 416.902 (stating that an "acceptable medical source" includes "treating sources"). This general rule, though, is subject to an important limitation: the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *See* §§

---

[1] The Commissioner does not dispute this characterization. In fact, the ALJ did not explicitly state in his decision whether he weighed doctors Hendrickson and Vaughan as treaters, though he did refer to Hendrickson's "primary care records" and Vaughan's "treatment records." (Tr. 28). This is not insignificant, as the Sixth Circuit has reversed and remanded for similar reasons. *See Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (reversing and remanding because "the ALJ [did] not explain in her decision whether she weighed [a doctor] as an expert, a treater, or both").

7

404.1527(c)(2); 416.927(c)(2).

Due to this general rule in favor of "treating sources," the ALJ was obligated to give "good reasons" for the weight accorded to the assessments by doctors Hendrickson and Vaughan. *Id.* More specifically, his decision must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). This is where the heart of Plaintiff's argument lies.

### a. Objective Evidence in the Record

Plaintiff takes issue with the ALJ's assertion that the assessments are "inconsistent with the objective evidence of record," pointing out that the ALJ never identified this contrary evidence. As a result, he argues that this assertion is not "sufficiently specific to make clear to any subsequent reviewers . . . the reasons for" the weight assigned. The Sixth Circuit's decisions in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013) and *Sharp v. Barnhart*, 152 F. App'x 503 (6th Cir. 2005) are instructive.

In *Gayheart*, the Sixth Circuit deemed the ALJ's reference to the two prongs of the test for controlling weight–"well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record"–to be lacking sufficient specificity:

> [T]he conclusion that Dr. Onady's opinions "are not well-supported by any objective findings" is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques), or that the findings are sufficiently objective but do

8

not support the content of the opinions.

> Similarly, the ALJ does not identify the substantial evidence that is purportedly inconsistent with Dr. Onady's opinions. Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

710 F.3d at 377 (citation omitted). The appellate court reached a similar conclusion in *Sharp*:

> That leaves the ALJ's last justification-that the treating physicians' opinions are not based on "medically acceptable clinical and laboratory diagnostic techniques." While we do not doubt that this ground may provide a valid reason for denying a disability claim in the abstract, the ALJ gave no explanation why these physicians' opinions were deficient or what medical evidence or tests would have satisfied the ALJ in the context of Meniere's disease and Benign Positional Vertigo. Neither does the ALJ explain why the extensive test results, diagnoses and other information contained in Sharp's submitted medical records do not suffice to support his physicians' opinions.
>
> . . . .
>
> In the face of the extensive records and specific diagnoses introduced by Sharp, the ALJ's generalized comment that the treating physicians' opinions were not "based on a solid clinical and diagnostic foundation," with no elaboration or detail, does not satisfy the procedural requirements for rejecting a treating physician's opinion laid out in § 404.1527(d)(2). What the court said in *Wilson* applies with equal force here: "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not."

152 F. App'x at 510 (some citations omitted).

In light of *Gayheart* and *Sharp*, the Court agrees with Plaintiff that a general assertion that the assessments are "inconsistent with the objective evidence of record" is

9

not sufficiently specific. While the ALJ's statement may not be a verbatim regurgitation of either the "clinical and laboratory diagnostic techniques" or "substantial evidence" prongs, it is at least akin to the latter, and is ambiguous and lacking any sort of explanation. In short, the ALJ's first reason does not suffice.

### b. July 2009 Release to Return to Work

In asserting that "Dr. Vaughan released [him] to return to work in July 2009 with restrictions to light to medium duty," Plaintiff contends that the ALJ erred by focusing on the doctor's invocation of "light to medium duty" rather than actual restrictions imposed, which he urges precludes sedentary to light work as defined in the regulations and are consistent with all of the doctor's later opinions. The July 6, 2009 note reads:

> [Plaintiff] returns. He is doing pretty well. It has been over 3 months since his surgery.
>
> **PHYSICAL EXAMINATION:** He can stand and walk okay. He is present with dad. Motor is intact. Straight-leg-raising is negative.
>
> **IMPRESSION/PLAN:** He may return to work on light to medium duty. Restrictions now through 10/1/09 are no lifting more than 20 pounds, and alternate between sitting and standing as needed. If no such light to medium duty work is available, I recommend he stay off work. I will check him back in 2 months for his final exam.

(Tr. 372).

Plaintiff is correct that Dr. Vaughan's restriction–that he must be able to alternate between sitting and standing as needed–would often preclude "light to medium duty." As explained in Social Security Ruling 83-12:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or

10

> walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

1983 WL 31253, at *4 (January 1, 1983). Moreover, an RFC determination is beyond Dr. Vaughan's purview. *See* §§ 404.1527(a)(2), 416.927(a)(2) (limiting medical opinions to "judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). The Court thus agrees that Dr. Vaughan's reference to "light to medium duty" is not a "good reason" to discount the assessments.[2]

---

[2] The Commissioner contends that "there is no evidence that the ALJ equated Dr. Vaughan's use of ["light to medium duty"] with the definitions of light and medium work activity" set forth in the regulations. (Doc. # 14, at 7). However, the Commissioner offers no alternative interpretation of the ALJ's reason, and ignores Dr. Vaughan's actual assessment, i.e., that Plaintiff must alternate between sitting and standing.

Besides taking issue with the ALJ's characterization of the treatment note, Plaintiff also argues that the ALJ ignored what happened to him after July 2009, i.e., his pain worsened when he lifted a trash can. Dr. Vaughan's September 9, 2009 note reads:

> [Plaintiff] returns. He is complaining of some increasing pain. He says it is in his lower back going into his right leg. Preop it was in his left leg. That got better with surgery. He thinks it got worse when he lifted a trash can. Previously ordered physical therapy has not been done. He said Worker's Comp would not approve it or pay for it. The company he previously worked for was PTI driving a passenger van for a railroad. He says his place of employment has terminated him.
>
> **PHYSICAL EXAMINATION:** Weight 291 lb. Patient is present with father. He can stand and walk. Motor is intact.
>
> **IMPRESSION/PLAN:** Because he is having worsening pain in his back radiating into his right leg we will get an MRI with and without contrast of his lumbar. I am doubtful he has a recurrent disk herniation, but cannot say for sure.

(Tr. 428). And his February 17, 2010 note reads:

> [Plaintiff] returns. Today's symptoms are that of mainly lower back pain with some radiation into his left buttock. He says they come and go.
>
> **RADIOGRAPHIC STUDIES:** MRI has been done. It shows no recurrent disk herniation at L5-S1. There is a rightward disk bulge at L4-L5.
>
> **IMPRESSION/PLAN:** I explained to [Plaintiff] I do not see any problems in his back I would recommend surgical treatment on. He is also being treated by Dr. Corbett for a left shoulder rotator cuff tear and says they are considering surgery on that. I gave him an off-work statement through March 13th until he sees Dr. Corbett. I give him the restriction of lifting no more than 10 pounds.

(*Id.*). These notes demonstrate that Plaintiff's condition worsened between the note dated July 6, 2009 and the medical report and functional capacity questionnaire dated June 7, 2010 and September 7, 2010, respectively, which further supports the Court's conclusion that Dr. Vaughan's release of Plaintiff to "light to medium duty" also does not suffice.

12

Because two of the three reasons set forth by the ALJ either lack evidentiary support or are not sufficiently specific, remand is compelled in this case.[3]  That said, the ALJ is also encouraged to further articulate his third reason–that the "assessments are contraindicated by the conservative treatment provided by both physicians, as well as the level of severity that can reasonably be attributed to Plaintiff's impairments"[4]–even though the Court need not and thus does not evaluate it.  *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (contemplating multiple satisfactory reasons for the weight assigned).

### 2. The Court will not address Plaintiff's credibility argument

Besides making a litany of complaints with respect to the ALJ's treatment of the assessments completed by doctors Vaughan and Hendrickson, Plaintiff also argues that the ALJ's assessment of his credibility is flawed.  Ordinarily, the Court would be inclined to address such an argument to provide the ALJ further guidance on remand.  Here, though, this issue depends, at least to some degree, on the ALJ's treatment of the assessments of the doctors.  The Court therefore declines to consider this argument at this time.

---

[3] The Commissioner has not argued that this is a harmless error, and this rule does not appear to apply here.  *See Wilson*, 378 F.3d at 547 (recognizing three circumstances in which failure to provide "good reasons" may be harmless: when a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, when the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, or when the Commissioner has met the goal of the provision of the procedural safeguard of reasons even though she has not complied with the terms of the regulation).

[4] Presumably, this assertion refers to the ALJ's observation that "[r]ecent primary care has been conservative in nature," which the Court construes as treatment provided by the doctors Hendrickson and Vaughan after July 2009 based on the ALJ's outline of Plaintiff's treatment history.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ failed to adhere to the applicable regulations and a remand is therefore warranted. Accordingly,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is not supported by substantial evidence and is **REVERSED**, with this action **REMANDED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is **GRANTED IN PART** as to Plaintiff's request for a reversal of the Commissioner's decision, and **DENIED IN PART** as to his request for a court ordered award of benefits;

3. Defendant's Motion for Summary Judgment (Doc. # 14) is **DENIED**;

4. A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This 28th day of August, 2013.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\5-12-202 Bryant MOO.wpd